**STATE of Utah, Plaintiff and Appellee,**

v.

**Jane SHEPARD, Defendant and Appellant.**

**No. 970317–CA.**

Court of Appeals of Utah.

March 19, 1998.

---

Rosalie Reilly, Monticello, for Defendant and Appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, Associate P.J., and BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

Defendant Jane Shepard appeals a conditional guilty plea of possession of a controlled substance, a third degree felony in violation of Utah Code Ann. § 58–37–8 (1996), possession of a controlled substance, a class B misdemeanor in violation of Utah Code Ann. § 58–37–8, and possession of paraphernalia, a class B misdemeanor in violation of Utah Code Ann. § 58–37a–5 (Supp.1997). Defendant contends the trial court erred in denying her motion to suppress. We affirm.

## FACTS

On July 30, 1996, defendant was a passenger in a car her brother was driving southbound on State Highway 191. Utah Highway Patrol Trooper Sanford Randall pulled them over for traveling seventy-one miles per hour in a fifty-five mile per hour zone. Randall asked defendant's brother for a driver's license and vehicle registration. Defendant's brother produced a driver's license and claimed the car had been purchased by their father, but he was unable to find any registration card or other paperwork to establish ownership of the car. Trooper Randall and defendant's brother walked to the patrol vehicle, where Trooper Randall ran an NCIC (National Crime Information Center) check on the license plate. Dispatch reported that the plate number was "not on file."

Trooper Randall and defendant's brother returned to the stopped car, and Trooper Randall went to the passenger side and asked defendant if she had found any documentation. Defendant initially handed him a receipt for work done on the car with someone's name on it other than defendant's father. Trooper Randall testified that this made him suspicious that the car did not belong to them. Defendant then handed Trooper Randall a sixty-day temporary registration card. Because the card was handwritten and had no name on it or description of the car, only a vehicle identification number (VIN), Trooper Randall became increasingly suspicious the car was stolen. Trooper Randall asked defendant to exit the car so that he could compare the car's VIN with that on the registration. When defendant opened the door, Trooper Randall saw a corncob pipe in the side pocket of the door. Recognizing the pipe as a type used to smoke marijuana as well as tobacco, Trooper Randall asked defendant and the driver if they had any tobacco. They answered they did not. Randall then removed the pipe from the side pocket and sniffed it, detecting the odor of marijuana. Trooper Randall questioned defendant and her brother, and then searched the car, where he found marijuana and psilocybin mushrooms.

Before trial, defendant moved to suppress the evidence seized during the warrantless search, arguing Trooper Randall improperly exceeded the scope of a routine traffic stop and unlawfully seized the corncob pipe. The trial court denied defendant's motion. Defendant entered a conditional guilty plea and now appeals the denial of her motion to suppress.

## ANALYSIS

### I. Detention to Check VIN

" 'We review the factual findings underlying the trial court's decision to grant or

deny a motion to suppress evidence using a clearly erroneous standard.'" *State v. Pena,* 869 P.2d 932, 939 n. 4 (Utah 1994) (quoting *State v. Brown,* 853 P.2d 851, 854 (Utah 1992)). "[W]hether a specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewable nondeferentially for correctness ... [with] a measure of discretion to the trial judge when applying that standard to a given set of facts." *Id.* at 939. "To determine whether a search or seizure is constitutionally reasonable, we make a dual inquiry: (1) Was the police officer's action 'justified at its inception'? and; (2) Was the resulting detention 'reasonably related in scope to the circumstances that justified the interference in the first place'?" *State v. Lopez,* 873 P.2d 1127, 1131–32 (Utah 1994) (quoting *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968)). Defendant concedes the trooper was justified in making the initial stop because he observed the car speeding. She argues, however, that Trooper Randall exceeded the proper scope of the traffic stop when he detained her to check the VIN after she handed the officer a valid temporary registration card for the vehicle.

After an officer stops a vehicle, "the detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Lopez,* 873 P.2d at 1132 (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)). Accordingly, an officer who stops a vehicle for a traffic violation may ask for a driver's license and vehicle registration and may run a computer check on that information. *See id.* After the driver provides a proper driver's license and " 'evidence of entitlement to use the vehicle,'" the driver can no longer be detained. *Id.* (quoting *State v. Robinson,* 797 P.2d 431, 435 (Utah Ct.App. 1990)). Any further detention for investigative questioning "must be supported by reasonable suspicion of more serious criminal activity." *Id.* The reasonable suspicion must be "based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop." *Id.* Even if the officer's reasonable suspicion supports further detention, "the scope of the stop is still limited." *Id.* The officer must " 'dili-

gently [pursue] a means of investigation that [is] likely to confirm or dispel [his] suspicions quickly.'" *State v. Grovier,* 808 P.2d 133, 136 (Utah Ct.App.1991) (first two alterations in original) (quoting *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)).

First, we must determine whether the totality of the circumstances justified Trooper Randall's decision to detain defendant to check the car's VIN. At the suppression hearing, Trooper Randall testified, and the trial court concluded that he detained defendant because he had a reasonable suspicion the car was stolen. Defendant directs us to several cases she argues show the facts Trooper Randall relied on are insufficient to support his suspicion the car was stolen. However, none of the cases defendant cites involved a temporary registration certificate that the officer believed looked suspicious. In fact, in each of the cases the occupants of the car produced a normal valid registration. In *United States v. Soto,* 988 F.2d 1548 (10th Cir.1993), a driver produced a valid registration that had someone else's name on it. *See id.* at 1550. The driver told the officer, who had stopped the car for speeding, that the car belonged to his uncle; yet the driver was unable to give an address for his uncle. *See id.* The *Soto* court concluded that it was reasonable for the officer to ask the driver for his uncle's address to corroborate his story that he had borrowed the car from his uncle. *See id.* at 1556. The court held that "[d]efendant's complete failure to respond, among other factors, generated an objectively reasonable suspicion of illegal activity that would support further questioning by the officer." *Id.*

In this case, the facts Trooper Randall relied upon as reason to check the VIN on defendant's car are arguably more objectively reasonable than were the facts in *Soto.* Defendant produced a repair receipt with someone else's name on it and a temporary registration without a name or a description of the car. We agree with the trial court that the initial delay in producing papers to establish ownership, the repair bill in an unrelated party's name, and the unusual tem-

porary registration card without any name or description of the car were sufficient to support Trooper Randall's suspicion that the car had been stolen, and to support his decision to prolong the stop to check the VIN of the car against the registration.

■ Defendant also argues that even if the temporary registration and repair receipt supported a reasonable suspicion the car was stolen, Trooper Randall failed to "diligently pursue" a method of investigation that would "confirm or dispel his suspicions quickly." Defendant points out Randall could have called West Virginia Department of Motor Vehicles to verify the VIN number on the registration or could have put a call in to defendant's father. However, "[t]he question is not simply whether some . . . alternative method was available [to confirm or dispel suspicion], but whether the police acted unreasonably in failing to recognize or to pursue it." *Sharpe,* 470 U.S. at 687, 105 S.Ct. at 1576. We cannot say it was unreasonable for Trooper Randall to check the VIN on the car rather than pursue one of the methods defendant suggests. Trooper Randall pursued a quick and direct way to verify the registration by checking if the VIN of the car matched the VIN of the registration.

## II. "Search" for VIN

Next defendant claims the Trooper conducted an illegal search when he ordered her to exit the car so he could check the VIN. Defendant cites *State v. Larocco,* 794 P.2d 460, 466 (Utah 1990) (plurality opinion).

■ The United States Supreme Court recently held that a trooper's asking a passenger to exit the car was not illegal. *See Maryland v. Wilson,* —— U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). In *Wilson,* the Court was faced with deciding whether the holding in *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)—that a driver may be ordered to exit a lawfully stopped vehicle—should be extended to include passengers. *See Wilson,* —— U.S. at ——, 117 S.Ct. at 884. In extending *Mimms* to include passengers, the Court balanced concerns over the intrusion imposed on the public against concerns for the safety of police officers:

On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger. Regrettably, traffic stops may be dangerous encounters. In 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops. In the case of passengers, the danger of the officer's standing in the path of oncoming traffic would not be present except in the case of a passenger in the left rear seat, but the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer.

On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a motor vehicle offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such crime is every bit as great as that of the driver.

*Wilson,* —— U.S. at ——, 117 S.Ct. at 885. The *Wilson* Court explained that although officer safety justifies allowing police to order passengers from the car, officers need not observe threatening behavior before they direct a passenger out of a car. *See id.* The Court specifically held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the

stop." *Id.*[1] Under *Wilson,* Trooper Randall did not exceed the scope of a routine traffic stop when he ordered defendant to exit the car, and then discovered the corncob pipe in plain view in the side pocket of the door.

### III. Seizure of the Corncob Pipe

■ Finally, defendant argues Trooper Randall's seizure of the corncob pipe was not justified because a corncob pipe is not clearly incriminating. We disagree. A seizure is valid under the plain view doctrine if (1) the officer is lawfully present, (2) the item is in plain view, and (3) the item is clearly incriminating. *See State v. Keitz,* 856 P.2d 685, 690 (Utah Ct.App.1993).

■ The pipe was clearly incriminating. For an object in plain view to be "clearly incriminating," there must be " 'probable cause to associate the property with criminal activity.' " *State v. Kelly,* 718 P.2d 385, 390 (Utah 1986) (quoting *Texas v. Brown,* 460 U.S. 730, 741–42, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality opinion)). Probable cause requires only that the police officer reasonably believe " 'that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct.' " *Id.* (quoting *Brown,* 460 U.S. at 742, 103 S.Ct. at 1543 (plurality opinion)). Here, Trooper Randall reasonably believed the corncob pipe could be evidence of a crime because he knew such pipes are frequently used to smoke marijuana and defendant and her brother had denied having tobacco in the car. Accordingly, it was reasonable for Trooper Randall to seize the corncob pipe, in the admitted absence of any tobacco, and sniff it to determine if the pipe had been used for smoking marijuana.

1. No Utah cases have addressed whether a police officer may order a passenger out of a car during a routine traffic stop since the Supreme Court's ruling in *Wilson.* Before *Wilson,* the Utah Supreme Court had held that a police officer who opened a passenger door and questioned the passenger conducted an unlawful search. In *State v. Schlosser,* 774 P.2d 1132 (Utah 1989), the court noted that under *Mimms,* a police officer may order a driver—but not a passenger—out of

### CONCLUSION

We conclude that Trooper Randall had reasonable suspicion to believe the car was stolen and thus was justified in detaining defendant while trying to check whether the VIN noted on the suspicious temporary registration matched the VIN of the car. Furthermore, we conclude that Trooper Randall's request that defendant exit the car was proper. Finally, we conclude that Trooper Randall properly seized the corncob pipe because it was in plain view and it was, under the circumstances, clearly incriminating. Thus we affirm the trial court's denial of defendant's motion to suppress.

WILKINS, Associate P.J., and ORME, J., concur.

a car during a traffic stop. *See Schlosser,* 774 P.2d at 1135 n. 3. Thus, the court concluded that when the officer opened the passenger door he exceeded the scope of the traffic stop, and the search therefore was lawful only if the officer had probable cause to justify it. *See id.* at 1136. However, until the Utah Supreme Court decides otherwise under the Utah Constitution, *Wilson* is controlling in Utah.