[No. 66318-1. En Banc.]
Argued September 23, 1998. Decided January 28, 1999.
THE STATE OF WASHINGTON, *Respondent*, v. EFRAIN
MENDEZ, *Petitioner.*

---

*Hugh M. Spall, Jr.*, for petitioner.
*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

TALMADGE, J. — In a case where police officers had probable cause to detain a driver of an automobile for a traffic infraction, we must decide the scope of the officers' authority over the passengers of that automobile. Under article I,

section 7 of the WASHINGTON CONSTITUTION with its more extensive protection of private affairs than the federal constitution, we hold an officer has the authority to order the driver of a vehicle detained for a traffic infraction to remain in the vehicle or to leave the vehicle in furtherance of the officers' need to control the scene of the traffic stop. With respect to the passengers, however, an officer must have an articulable rationale predicated upon safety considerations to order the passengers out of the car or to remain in the car.

Under the facts of this case where the officers could articulate no reason for ordering Mendez, a passenger, to remain in the vehicle during the traffic stop, we hold the evidence generated from Mendez's detention and search should have been suppressed. We reverse the judgment of the trial court and the order denying the motion to suppress, and remand the case to the trial court for proceedings consistent with this opinion.

## ISSUE

Does WASH. CONST. art. I, § 7 permit the police to detain a passenger in an automobile at the scene of a traffic infraction if the passenger wishes to depart, the police lack reasonable suspicion the person is engaged in criminal activity, and the person poses no apparent danger to the officer?

## FACTS

On February 6, 1996, at approximately 12:50 in the afternoon, one of two Yakima police officers in a patrol car on routine patrol observed a vehicle fail to stop at a stop sign. The officers activated the patrol car's overhead lights, and stopped the car that ran the stop sign. Both officers exited the patrol car and approached the stopped vehicle. Efrain Mendez, 16, was a passenger in the front seat of the stopped vehicle. Both he and the driver got out of the vehicle as soon as it came to a stop. Both officers testified Mendez then began walking away. One of the officers told Men-

dez to get back into the vehicle, but Mendez turned, fumbled with his shirt and reached inside his clothes more than once, and continued walking away. He then ran, even after a subsequent command to return to the vehicle.

Officer Hartman chased Mendez on foot, caught him, and placed him under arrest. Although the trial court described the chase as "brief," Hartman testified:

> He ran south through Lions Park, and then he crossed eastbound across Fifth Avenue, and then he went south to Tieton, and then when he went east on Tieton towards Fourth Avenue I lost sight of him behind the credit union building. I was about a — I was back at Pine, so I just paralleled him east on Pine, and picked him up again over by the trolley barns.

Report of Proceedings at 10. Upon arresting Mendez, the officer searched him and found a pipe the officer believed was used to smoke marijuana.

The Yakima County Prosecutor charged Mendez with violation of RCW 9A.76.020(1), obstructing a public servant, alleging he

> did knowingly hinder, delay, obstruct, a public servant, in the discharge of his/her official powers and duties as a police officer, to-wit: ran from officers during a traffic stop.

Clerk's Papers at 2.[1] Count II of the information charged Mendez with possession of drug paraphernalia.

Mendez moved to suppress evidence of the marijuana pipe. The juvenile division of the trial court combined the motion to suppress with a bench trial on the merits on the same day. The court commissioner, the Honorable Michael E. Schwab, denied the motion to suppress and found Mendez guilty of both counts, concluding as a matter of law:

> Efrain Mendez hindered, delayed and obstructed the officers in their investigation of the traffic stop by running away from the scene. Mendez' actions in reaching inside his clothing and

---

[1]The statute provides, "(1) A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties."

disobeying the officer's commands to stop were also specific, articulable facts which properly aroused the officers' suspicion and distracted their traffic stop.

Clerk's Papers at 11. Mendez appealed his adjudication from juvenile court and the Court of Appeals affirmed the judgment, adopting the rationale of the United States Supreme Court in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977), and *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997), that ordering a passenger to stay in a vehicle was a de minimis intrusion under the Fourth Amendment. Judge Schultheis dissented, believing such an order must comply with the standards of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and the order did not do so here. *State v. Mendez*, 88 Wn. App. 785, 947 P.2d 256 (1997). Mendez sought review by this Court, which we granted.

## ANALYSIS

■■ We review findings of fact on a motion to suppress under the substantial evidence standard. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. *Id.* at 644. We review conclusions of law in an order pertaining to suppression of evidence de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

A. FOURTH AMENDMENT ANALYSIS[2]

The United States Supreme Court has developed a strong

---

[2]We note at the outset this case is distinguishable from three other cases we heard this term, *State v. Parker*, No. 66147-2; *State v. Jines*, No. 66522-2; and *State v. Hunnel*, No. 66523-1. In those cases, officers had lawfully arrested an occupant of a vehicle. Safety concerns and concerns for the destruction or hiding of evidence are different when an arrest has occurred as compared to the present situation, a noncriminal traffic stop. *See Knowles v. Iowa*, 525 U.S. 113, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998) (same). The driver of the vehicle in which Mendez was a passenger was stopped for running a stop sign. Such an infraction is not a criminal offense. RCW 46.63.020; *City of Bremerton v. Spears*, 134 Wn.2d 141, 151, 949 P.2d 347 (1998) (Legislature has decriminalized many minor traffic offenses, citing RCW 46.63.020).

policy in its Fourth Amendment jurisprudence conferring considerable authority upon police officers at the scene of a traffic stop. In *Pennsylvania v. Mimms*, 434 U.S. 106, the United States Supreme Court approved of a police order to the driver of a car stopped for a traffic infraction to get out of the car. Balancing the public interest—in this case, officer safety—against "the individual's right to personal security free from arbitrary interference by law officers," the Court held the intrusion into the driver's right to privacy was "de minimis." Not only is this not a serious intrusion on the sanctity of the person, the Court held, but it "hardly rises to the level of a 'petty indignity.' " *Id.* at 109, 111. The *Mimms* holding thus allows a limited police intrusion into a person's freedom from interference in order to preserve officer safety even in the absence of circumstances that would justify an investigatory *Terry* stop. As the Ohio Supreme Court put it:

> *Mimms* merely dispenses with the requirement that the police officer possess reasonable suspicion of criminal activity [the *Terry* standard] before the officer may order the driver out of an already lawfully stopped vehicle. Accordingly, the ordering of defendant to get out of his car was proper even if the officers were unable to articulate a reasonable suspicion which prompted this action.
>
> . . . It is so minimal and insignificant an intrusion that the *Mimms* court refused to apply the requirements for an investigatory stop. Unlike an investigatory stop, where the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion," *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906, a *Mimms* order does not have to be justified by any constitutional quantum of suspicion.

*State v. Evans*, 67 Ohio St. 3d 405, 618 N.E.2d 162, 166 (1993), *cert. denied*, 510 U.S. 1166, 114 S. Ct. 1195, 127 L. Ed. 2d 544 (1994).

Just last year, the United States Supreme Court extended

the *Mimms* holding to include passengers as well as drivers in *Maryland v. Wilson,* 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) (police officer may order passenger of lawfully stopped vehicle to exit for safety purposes). Numerous courts have followed *Wilson.*[3]

The State argues we should now extend *Wilson* and hold that after a valid traffic stop an officer may, for the purpose of officer safety, order a passenger to remain inside the stopped vehicle even in the absence of factors justifying a *Terry* stop. Mendez correctly argues *Wilson* expressly did not consider the validity of an order to remain inside a vehicle. *Wilson,* 519 U.S. at 415 n.3. He also argues his situation was different from *Wilson* because he was leaving the scene and neither did anything to arouse suspicion nor constituted a threat to officer safety.

■ But we do not resolve this case on Fourth Amendment principles, believing we should first attempt to resolve the case on the principles of WASH. CONST. art. I, § 7. *State v. Hendrickson,* 129 Wn.2d 61, 69, 917 P.2d 563 (1996); *State v. Johnson,* 128 Wn.2d 431, 909 P.2d 293 (1996); *State v. Young,* 123 Wn.2d 173, 178-79, 867 P.2d 593 (1994).

## B. ARTICLE I, SECTION 7 ANALYSIS

■ After we granted the petition for review in this case, the State filed a motion asking us to strike Mendez's argument regarding article I, section 7 because it was not raised in the Court of Appeals. The State also asserted that because Mendez failed to discuss the six independent state constitutional analysis factors set forth in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986), we should not reach the State constitutional issue. We dis-

---

[3]*See, e.g., United States v. Coleman,* 148 F.3d 897 (8th Cir.), *cert. denied,* 119 S. Ct. 228 (1998); *People v. Gonzalez,* 294 Ill. App. 3d 205, 689 N.E.2d 1187, 1191, 228 Ill. Dec. 766, *appeal allowed,* 177 Ill. 2d 576, 698 N.E.2d 545, 232 Ill. Dec. 454 (1998); *People v. Robinson,* 74 N.Y.2d 773, 543 N.E.2d 733, 733-34, *cert. denied,* 493 U.S. 966, 110 S. Ct. 411, 107 L. Ed. 2d 376 (1989); *State v. Shepard,* 955 P.2d 352, 356 (Utah Ct. App. 1998); *Harris v. Commonwealth,* 27 Va. App. 554, 500 S.E.2d 257 (1998). *But see State v. Morton,* 151 Or. App. 734, 951 P.2d 179 (1997) (officer may not ask passenger to leave stopped vehicle if officer has no safety concerns).

agree. Mendez articulated the pertinent *Gunwall* factors in his petition for review. We deny the State's motion because Mendez raised the *Gunwall* factors, albeit late in the appellate process, and the core issue is not new; only the application of the State constitution to these facts is new. Given the preeminence of our State constitution in matters of privacy, there is no valid reason why we should not first consider article I, section 7. *Hendrickson*, 129 Wn.2d at 70 n.1.

We have previously held the first, second, third, fifth and sixth *Gunwall* criteria all lead to the conclusion article I, section 7 provides greater protection to privacy than the Fourth Amendment. Only the fourth *Gunwall* factor—preexisting state law—needs to be addressed here. *State v. Young*, 135 Wn.2d 498, 509, 957 P.2d 681 (1998).

Moreover, by analogy, we have often indicated article I, section 7 provides greater protection against warrantless searches of automobiles than the Fourth Amendment. *Hendrickson*, 129 Wn.2d at 70 n.1 (and cases cited therein).

We have addressed the specific question of whether an officer can order a driver to leave the vehicle pursuant to a legitimate traffic stop. We adopted the holding of *Mimms* in *State v. Kennedy*, 107 Wn.2d 1, 8, 726 P.2d 445 (1986), without extensive discussion of any article I, section 7 implications. *See also State v. Sykes*, 27 Wn. App. 111, 116, 615 P.2d 1345 (1980); *State v. Belieu*, 112 Wn.2d 587, 594-95, 773 P.2d 46 (1989). No Washington court has specifically discussed whether *Mimms* comports with the greater privacy protections of article I, section 7. *Compare State v. Landry*, 588 So. 2d 345, 346 (La. 1991) (adopting *Mimms* rationale for both driver and passengers); *People v. Harmelin*, 176 Mich. App. 524, 440 N.W.2d 75, (1989), *aff'd*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (*Mimms* does not offend greater privacy rights in Michigan constitution); *State v. Arthur*, 149 N.J. 1, 16, 691 A.2d 808 (1997) (same for New Jersey constitution); *Commonwealth v. Rodriguez*, 695 A.2d 864, 870 (Pa. Super. Ct. 1997) (same for Pennsylvania constitution), *with State v. Kim*, 68 Haw. 286, 711 P.2d 1291, 1294 (1985) (rejecting *Mimms* pursuant to

Hawaii constitution and requiring *Terry* stop justifications to order driver from car).

No Washington case has addressed the corollary question of whether an officer with probable cause to detain a driver for a traffic infraction may order a passenger to get out of the vehicle or remain in the vehicle. But our prior cases have indicated that article I, section 7 affords law enforcement officers more limited authority over vehicle passengers. In *State v. Larson*, 93 Wn.2d 638, 642, 611 P.2d 771 (1980), a case involving both the Fourth Amendment and article I, section 7, we said: "[A] stop based on a parking violation committed by the driver does not reasonably provide an officer with grounds to require identification of individuals in the car other than the driver, unless other circumstances give the police independent cause to question passengers." (Emphasis omitted.) *See also State v. Broadnax*, 98 Wn.2d 289, 295-96, 654 P.2d 96 (1982) (mere presence of defendant at suspect's home being searched pursuant to search warrant did not justify frisk of his person), *abrogated on other grounds by Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). Except in unusual circumstances, there will obviously be no probable cause to believe the passenger, as well as the driver, was responsible for the traffic infraction. No such circumstances appear in this case.

Mendez argues we should consider various traffic statutes in determining preexisting Washington law for purposes of our *Gunwall* analysis. He is correct in asserting that certain statutes provide for significant protections to automobile drivers. *See, e.g.*, RCW 46.64.015 (forbidding detention for issuing a traffic citation to last no more than a reasonable amount of time). We would be oblivious to actual events, however, were we say this is the only possible view of traffic laws. When we interpreted RCW 46.61.021 in *State v. Rife*, 133 Wn.2d 140, 943 P.2d 266 (1997), to forbid warrants checks in traffic stops, the Legislature acted with uncharacteristic dispatch in a special legislative session to amend the statute to permit what we had deemed forbid-

den. LAWS OF 1997, Sp. Sess., ch. 1, § 1. The amended statute became effective only three weeks after we issued *Rife*. Demonstrably, statutes can be ephemeral and are therefore not particularly helpful to Mendez's position. Immutable constitutional principles provide more sturdy support.

In summary, preexisting Washington law indicates a general preference for greater privacy for automobiles and a greater protection for passengers than the Fourth Amendment, but Washington cases have adopted *Mimms* to analyze the authority of officers to order a vehicle's driver out of the car. Also, our statutes on traffic stops are not helpful for our *Gunwall* analysis.

■ Our analysis under article I, section 7 requires us to determine "whether the State unreasonably intruded into the defendant's 'private affairs.' " *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). "The analysis under article I, § 7 focuses, not on a defendant's actual or subjective expectation of privacy but, as we have previously established, on those privacy interests Washington citizens held in the past and are entitled to hold in the future." *State v. White*, 135 Wn.2d 761, 768, 958 P.2d 982 (1998). Our task is to balance these privacy interests against concerns for officer safety during traffic stops. Plainly, in any traffic stop, concerns about officer safety and control of the situation are entirely relevant. *See Wilson*, 519 U.S. at 413 (statistics detailing assaults on officers during traffic stops). We can envision numerous factual scenarios, only slightly different from the present case, with a high potential for the situation spinning out of control and officer safety being jeopardized.[4]

---

[4]Instead of a daylight stop in downtown Yakima of the car by two officers, a stop of a car at night in a more isolated location would be more menacing to a lone officer if all four passengers exited the vehicle on his approach. Moreover, additional factors comprising the totality of the circumstances, such as the time of day, location, that the officers might have been responding to call for help in the neighborhood all might be factors added to running away that might justify a *Terry* stop. "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." *Sibron v. New York*, 392 U.S. 40, 66-67, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). *See*

With these matters in mind, we conclude Washington's constitutional policy of greater protection to the privacy of individuals in automobiles than the Fourth Amendment provides must carry the day. We fashion rules here to meet that State constitutional standard. Where the officer has probable cause to stop a car for a traffic infraction, the officer may, incident to such stop, take whatever steps necessary to control the scene, including ordering the driver to stay in the vehicle or exit it, as circumstances warrant. This is a de minimis intrusion upon the driver's privacy under article I, section 7. *See Kennedy*, 107 Wn.2d at 9.

█ However, with regard to passengers, we decline to adopt such a bright-line, categorical rule. A police officer should be able to control the scene and ensure his or her own safety, but this must be done with due regard to the privacy interests of the passenger, who was not stopped on the basis of probable cause by the police. An officer must therefore be able to articulate an objective rationale predicated specifically on safety concerns, for officers, vehicle occupants, or other citizens, for ordering a passenger to stay in the vehicle or to exit the vehicle to satisfy article I, section 7. This articulated objective rationale prevents groundless police intrusions on passenger privacy. But to the extent such an objective rationale exists, the intrusion on the passenger is de minimis in light of the larger need to protect officers and to prevent the scene of a traffic stop from descending into a chaotic and dangerous situation for the officer, the vehicle occupants, and nearby citizens.

To satisfy this objective rationale, we do not mean that an officer must meet *Terry*'s standard of reasonable suspicion of criminal activity. *Terry* must be met if the purpose of the officer's interaction with the passenger is investigatory. For purposes of controlling the scene of the traffic stop and to preserve safety there, we apply the standard of an objective rationale. Factors warranting an officer's direction to a passenger at a traffic stop may include

*also State v. Little*, 116 Wn.2d 488, 806 P.2d 749 (1991); *State v. Graham*, 130 Wn.2d 711, 927 P.2d 227, 65 A.L.R.5TH 773 (1996).

the following: the number of officers, the number of vehicle occupants, the behavior of the occupants, the time of day, the location of the stop, traffic at the scene, affected citizens, or officer knowledge of the occupants. These factors are not meant to be exclusive; nor do we hold that any one factor, taken alone, automatically justifies an officer's direction to a passenger at a traffic stop. The inquiry into the presence or absence of an objective rationale requires consideration of the circumstances present at the scene of the traffic stop.[5]

## C. APPLICATION OF ARTICLE I, SECTION 7 TO THIS CASE

The trial court held, "The traffic stop of the Mendez vehicle constituted a seizure of the vehicle and all of its passengers." Conclusion of Law No. 4 (Clerk's Papers at 11). Mendez assigned error to this conclusion of law, Br. of Appellant at 1, but then presented no argument directly on

---

[5]The New Jersey Supreme Court had adopted a similar rule for ordering passengers to exit a stopped vehicle. Relying on the reasoning in *Mimms*, the court in *State v. Smith*, 134 N.J. 599, 637 A.2d 158, 167 (1994), said:

> To support an order to a passenger to alight from a vehicle stopped for a traffic violation, therefore, the officer need not point to specific facts that the occupants are "armed and dangerous." Rather, the officer need only point to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.

An application of this rule appears in a subsequent New Jersey case, *State v. Smith*, 306 N.J. Super. 370, 703 A.2d 954 (1997). There, two troopers stopped a vehicle they observed veering across lanes at least six times within a mile. One trooper approached the car from the passenger side and observed a plastic bag protruding from the passenger's right front pocket that appeared to contain marijuana. He also smelled alcohol in the car. The other trooper ordered the driver out of the car and ordered the passenger to keep his hands on the dashboard. Despite that order, one trooper observed the passenger move his hands from the dashboard and out of sight. The trooper immediately went to the passenger side of the car and observed two packages wrapped in duct tape between the passenger's legs. Suspecting cocaine, the troopers arrested both passenger and driver. Citing the earlier *Smith* case, the court held the order for the passenger to keep his hands on the dashboard was "a valid measure to protect the trooper's safety, especially in light of his strong suspicion of narcotics in the car." *Smith*, 703 A.2d at 959. This case illustrates the necessity for an objective rationale before an officer may intrude on the privacy interests of a passenger in a vehicle stopped for a noncriminal traffic violation.

this point. Mendez did argue he was entitled to walk away from the vehicle after it was stopped, Br. of Appellant at 10, but did not explain why he should have been able to do so after being seized, as the trial court concluded he had been by the traffic stop. In any event, the trial court's conclusion Mendez was seized by the traffic stop is clearly wrong.

"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We recently affirmed the following rule stemming from *Terry*: " 'A person is "seized" within the meaning of the Fourth Amendment only when, by means of physical force or a show of authority, his freedom of movement is restrained. . . . There is a "seizure" when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *State v. Young*, 135 Wn.2d 498, 510, 957 P.2d 681 (1998) (quoting *State v. Stroud*, 30 Wn. App. 392, 394-95, 634 P.2d 316 (1981) (footnote omitted)) (citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

Stopping the car in which Mendez was a passenger did not effect a seizure of Mendez or the other passengers. While the operator of a vehicle is seized when a police authority signals the operator to stop after a traffic infraction, the privacy rights of passengers in that stopped vehicle are not diminished by the stop. "There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers." *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 886, 137 L. Ed. 2d 41 (1997).

The police did seize Mendez, but not by stopping the vehicle. Mendez exited the stopped car and began immediately walking away *before* Officer Hensley ordered him to stay in or return to the car. Officer Hartman testified, "We had barely even time to stop our car, and two people were out of the car." Report of Proceedings at 31. Thus, the seizure of Mendez occurred when Officer Hensley first

uttered the command for him to get back into the car. As soon as Hensley gave the command, Mendez was no longer free to leave; he was seized.

 To justify a *Terry* stop under the Fourth Amendment and article I, section 7, a police officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Armenta*, 134 Wn.2d 1, 20, 948 P.2d 1280 (1997). The level of articulable suspicion necessary to support an investigative detention is "a substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). Probable cause is not required for a *Terry* stop because a stop is significantly less intrusive than an arrest. *Id.*; *Brown v. Texas*, 443 U.S. 47, 50, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979) (same).

 The trial court concluded there was substantial evidence to justify a *Terry* stop:

> Efrain Mendez hindered, delayed and obstructed the officers in their investigation of the traffic stop by running away from the scene. Mendez' actions in reaching inside his clothing and disobeying the officer's commands to stop were also specific, articulable facts which properly aroused the officers' suspicion and distracted their traffic stop.

Clerk's Papers at 11. Flight from officers where the officers have grounds for a *Terry* stop and a refusal to halt at their order may constitute obstruction of a public servant under former RCW 9A.76.020. *State v. Little*, 116 Wn.2d 488, 496, 806 P.2d 749 (1991) (Seattle police had agreement with public housing agency management to investigate trespassers on grounds of public housing complex; complex had reported chronic trespass problem and officers received report of juveniles loitering on complex premises; juvenile properly convicted of obstruction when he fled after uniformed officer identified himself and sought to stop juvenile pursuant to *Terry*). *See also State v. Graham*, 130

Wn.2d 711, 927 P.2d 227, 65 A.L.R.5TH 773 (1996) (flight from a police officer acting as a private security guard may be obstruction of a public servant). But flight alone may not be enough to justify a *Terry* stop.[6]

We hold the trial court erred in finding the stop of Mendez satisfied *Terry*. We further hold the officers did not meet the objective rationale test under article I, section 7 we have articulated in this case that would allow them to order Mendez back into the vehicle. Officer Hartman testified he had no suspicions Mendez had engaged or was about to engage in criminal conduct. Neither officer testified that Mendez's actions in reaching inside his clothing aroused any suspicion. Besides, Mendez did not reach inside his clothing until *after* he had been seized by Officer Hensley's command to return to the car. "Obviously, once an individual is 'seized,' no subsequent events or circumstances can retroactively justify the 'seizure.' " *State v. Stinnett*, 104 Nev. 398, 760 P.2d 124, 126 (1988).

Substantial evidence is lacking to support the conclusion Mendez hindered, delayed, or obstructed the officers. Officer Hartman was rather vague when asked about the basis for the decision to order Mendez back into the vehicle:

> Well, I felt he was putting us both at risk. I've had previous experiences where people that have run from cars, there's been guns found in cars, people have had warrants. And what we wanted to do was contact the driver. And I felt he put us at unnecessary risk by running, putting us in that situation.

Report of Proceedings at 30. Officer Hensley was clearer in positively denying Mendez posed any risk by running, but he, too, could not justify the order to require Mendez to stay in the car:

---

[6]Although "[f]light is an element of probable cause," *State v. Baxter*, 68 Wn.2d 416, 421-22, 413 P.2d 638 (1966), "a suspect's leaving at the time that a police cruiser arrives does not necessarily lead to the conclusion that it is reasonable to suspect that person of a crime." *State v. Larson*, 93 Wn.2d 638, 645, 611 P.2d 771 (1980). *See State v. Thompson*, 93 Wn.2d 838, 841, 613 P.2d 525 (1980) (hurried walking away without even looking back not enough to create reasonable suspicion of criminal conduct); *State v. Walker*, 66 Wn. App. 622, 629, 834 P.2d 41 (1992) ("flight alone" not enough to justify *Terry* stop).

The only thing that would maybe be a hindrance would be, I was also listening on the portable radio to Officer Hartman while he was in foot pursuit, to see if he had apprehended—which direction of travel he was going, if anyone was coming to help him. So, maybe my attention wasn't fully focused on the driver as it should have been. Or the other occupants of the vehicle. . . .

Q. [by Mendez on cross-examination] Had Officer Hartman not given chase, and specifically had the respondent simply walked away and kept on walking, and Officer Hartman had stayed with you, can you describe in what way you would have been hindered in going through the process that you described with the driver? . . .

A. I don't know that I would have — if — I don't know that there would have been any hindrance.

Report of Proceedings at 52. The officers' testimony does not provide substantial evidence to support the trial court's conclusion that "Efrain Mendez hindered, delayed and obstructed the officers in their investigation of the traffic stop by running away from the scene" because they could not articulate a reason for requiring Mendez to stay in the vehicle under the limited standard we set forth here for traffic stop scenes or the standard of *Terry*.

But, even after observing "there is no evidence in this record that [Mendez] posed any real danger to the police," the Court of Appeals concluded the police constitutionally ordered Mendez to return to the car, holding "the benefit of increased police protection outweighs the intrusion to passengers." *Mendez*, 88 Wn. App. at 792. We disagree.

The situation may well have been different had Mendez remained standing by the passenger side door, had he behaved in any way the police viewed as threatening or potentially dangerous, or had the scene at the traffic stop required him to stay in the vehicle. But Mendez was already walking away when he was told to stop. The officers were present in this instance in broad daylight in Yakima. No specific safety concerns were present at the scene. They had control of the situation as the driver remained where

he was directed. The other passengers remained in the vehicle. Mendez had not committed a crime. Without more, and in view of the officers' testimony that Mendez did not do anything to make them fearful for their safety except run away, we cannot conclude, as the Court of Appeals did, that "increased police protection" justified the seizure and subsequent arrest of Mendez. The officers, the trial court, and the Court of Appeals were unable to articulate an objective safety rationale under article I, section 7 for the officers' ordering Mendez back into the vehicle or a basis for a *Terry* stop.

## CONCLUSION

Mendez was a passenger in a vehicle involved in a legitimate traffic stop. After a police cruiser had made the vehicle stop for investigation of a traffic infraction, Mendez exited and began walking away. The police ordered him to stop. Mendez kept walking and eventually began running away. The police caught him, searched him incident to the arrest, and found a marijuana pipe.

The police were unable to articulate facts that reasonably suggested a problematic situation at the scene of the traffic stop that warranted stopping Mendez from leaving. Neither officer expressed concerns for their safety from the fleeing Mendez. The police had no probable cause to suspect Mendez of having committed a crime or any expectation he was about to commit a crime.

The trial court should have suppressed the evidence of the marijuana pipe the police found on Mendez in the search incident to his arrest because the arrest was unconstitutional under article I, section 7. We reverse the judgment against Mendez and the order denying suppression of the evidence, and remand the case to the trial court for proceedings consistent with this opinion.

GUY, C.J., DURHAM, SMITH, JOHNSON, MADSEN, ALEXANDER, and SANDERS, JJ., and DOLLIVER, J. PRO TEM., concur.

[No. J.D. 13. En Banc.]
Argued October 21, 1998. Decided January 28, 1999.