# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55334-1-II |
| Respondent, | |
| v. | |
| LEWIS ANTHONY SCHEINOST, | UNPUBLISHED OPINION |
| Appellant. | |

PEÑALVER, J.P.T.[1] – Lewis Scheinost appeals his convictions of obstructing a law enforcement officer and unlawful possession of a controlled substance. The convictions arose out of an incident in which a police officer attempted to stop Scheinost for questioning, believing that Scheinost may have been a suspected shoplifter. Scheinost was riding a bicycle, and sped up when the officer asked him to stop. The officer pursued Scheinost for 20 feet before apprehending him and arresting him for obstruction. Upon a search incident to arrest, Officer Morine found a controlled substance and drug paraphernalia. Following a bench trial, Scheinost was convicted of obstructing a law enforcement officer and unlawful possession of a controlled substance.

Scheinost argues that the officer did not have enough information to conduct a lawful *Terry*[2] stop. In addition, Scheinost argues that any delay caused by his failure to stop was too

---

[1] Judge Peñalver is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[2] *Terry v. Ohio,* 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

insignificant to be a considered an obstruction, and that even if the delay were significant enough, he was still not guilty of obstruction because RCW 9A.76.020 does not impose an obligation to proactively cooperate with a police investigation. Finally, Scheinost contends that his conviction for unlawful possession of a controlled substance must be vacated in accordance with *Blake*.

We conclude that, regardless of any authority to order a *Terry* stop and any duty to obey that order, the delay in this case was too insignificant to warrant an obstruction conviction. We also agree that under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), Scheinost's conviction of unlawful possession of a controlled substance must be vacated, but this issue is moot because the trial court has already vacated Scheinost's unlawful possession of a controlled substance conviction. Accordingly, we reverse and remand to vacate Scheinost's conviction for obstruction of a law enforcement officer.

## FACTS

On August 30, 2019, Officer Morine of the Shelton Police Department received a call from dispatch informing him that a shoplifting incident at the Shelton Safeway had "just occurred." Clerk's Papers (CP) at 89. Dispatch provided Officer Morine with a description of the suspect, and Officer Morine responded to the area to help search for the suspect.

Within a few minutes of the initial 911 call, Officer Morine observed Scheinost riding his bike approximately four blocks from the Safeway. Officer Morine believed that Scheinost matched the suspect's description.

Officer Morine concluded that he had grounds for a lawful *Terry* stop for third degree theft. He therefore activated his emergency lights and pulled into the opposite lane to stop in front of Scheinost. Officer Morine got out of his vehicle and yelled at Scheinost to stop. Scheinost began

to slow down as he approached the officer, but he did not stop, so Officer Morine again yelled for Scheinost to stop. Scheinost told the officer that he did not believe that the officer had a reason to stop him and began to peddle faster.

Officer Morine pursued Scheinost, caught up to him, and pushed him against a fence to stop him, all within 20 feet of the start of the chase. Having stopped Scheinost, Officer Morine handcuffed him and told him that he was under arrest for obstructing a law enforcement officer. During a search incident to his arrest, Officer Morine discovered that Scheinost had suboxone, later discovered to contain buprenorphine, and drug paraphernalia on him. The Safeway security guard arrived at the scene and advised the police that Scheinost was not the suspected shoplifter.

The State charged Scheinost with unlawful possession of a controlled substance and obstructing a law enforcement officer. Scheinost moved to suppress the suboxone and drug paraphernalia, and to dismiss the unlawful possession of a controlled substance charge, arguing that Officer Morine did not have a sufficient basis for a valid *Terry* stop and that the search incident to arrest for obstruction was unlawful because Scheinost was not obligated to respond to the officer's orders to stop. The trial court denied the motion.

For the trial, Scheinost stipulated to the facts in the police report. Following a bench trial, the trial court found Scheinost guilty on both charges.

Scheinost appeals his convictions.

## DISCUSSION

### I. OBSTRUCTION OF AN OFFICER

Scheinost argues that any delay caused by his decision not to stop was insufficient to be considered obstruction. And even if the delay were significant enough, he still did not violate RCW 9A.76.020 because the statute does not impose a duty to cooperate with police investigations.

Focusing on the short delay at issue in this case, we conclude that Scheinost did not violate RCW 9A.76.020.

### A. LEGAL PRINCIPLES

*1. RCW 9A.76.020*

"A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020.

*2. Sufficiency of the Evidence*

The State must prove every element of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The evidence is sufficient to support a conviction if, beyond a reasonable doubt when viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime. *Id.* Every inference "must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Following a bench trial, an appellate court's review is limited to whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014).

B. ANALYSIS

Relying on *State v. E.J.J.*, 183 Wn.2d 497, 354 P.3d 815 (2015), Scheinost argues that even if he were required to stop for the officer, any delay that he caused by not stopping was too minor to be considered obstruction. In *E.J.J.*, the defendant appealed his conviction for obstructing a law enforcement officer that stemmed from a "verbal interaction" he had from his front door with law enforcement officers in his front yard. 183 Wn.2d at 499-501. On appeal, he argued that RCW 9A.76.020 was unconstitutional as applied to his behavior. *Id.* at 501. Even though the defendant's behavior prompted an officer to escort the defendant to the home, the court explained that "minor delay [wa]s of no import" and reversed the conviction for insufficient evidence. *Id.* at 506, 508.

In reversing the conviction, *E.J.J.* focused on the mere inconvenience of the delay that the defendant had caused: " '[s]tates cannot consistent[ ] with our Constitution abridge . . . freedoms to obviate slight inconveniences or annoyances' " in order to achieve "a more convenient resolution to the situation." *Id.* at 506 (first alternation in the original) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 501-02, 69 S. Ct. 684, 93 L. Ed. 834 (1949)). " '[I]nconvenience cannot, taken alone, justify an arrest [for obstruction].' " *Id.* (alternations in the original) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 401 (4th Cir. 2003)).

Here, even assuming that Officer Morine had the authority to order a *Terry* stop and there existed a duty to comply with the order to stop, there still only appears to be a minor delay of no import. As in *E.J.J.*, such a minor delay is insufficient to support an obstruction conviction. The trial court made no specific findings of facts on any delays or hindrances that Scheinost caused. Rather, the court only found that Scheinost failed to follow the officer's "directions," Scheinost increased his speed after another order to stop, and the officer "caught up to Mr. Scheinost and

removed him from the bicycle." CP at 109. Furthermore, the police report, to which the parties stipulated, shows that even as Scheinost sped up on his bike, Officer Morine was able to detain him within 20 feet.

It is certainly believable that the 20-foot pursuit was an inconvenience to the officer, but a delay of mere seconds is too insignificant to warrant an arrest for obstruction. We therefore conclude that the findings that Scheinost merely disregarded a direction and order to stop, resulting in a minor delay, is insufficient to sustain his conviction of obstructing a law enforcement officer.

## II. UNLAWFUL POSSESSION OF CONTROLLED SUBSTANCE

Scheinost argues that under *Blake* this court must reverse and remand for the trial court to vacate his conviction for unlawful possession of a controlled substance. *Blake* declared the statute criminalizing the possession of a controlled substance to be unconstitutional. 197 Wn.2d at 195.

We have already ruled that the trial court's order in this case vacating Scheinost's conviction for unlawful possession of a controlled substance could be formally entered. RAP 7.2(e); Comm'r's Ruling (June 15, 2021) (granting the State's motion). Therefore, this issue is now moot. *Harbor Lands, LP v. City of Blaine*, 146 Wn. App. 589, 592, 191 P.3d 1282 (2008) (" 'A case is moot if a court can no longer provide effective relief.' " (quoting *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)).[3]

---

[3] Scheinost further argues that his two previous convictions for unlawful possession of a controlled substance must be removed from his offender score and—while the language is ambiguous—appears to ask us to vacate those convictions as well. Because Scheinost's only remaining conviction in this case is to be vacated in its entirety, Scheinost's offender score is not relevant to this conviction. Additionally, convictions from earlier cases are not properly before us on this appeal; therefore, this appeal is not the appropriate mechanism to have those convictions vacated.

No. 55334-1-II

CONCLUSION

We conclude that there was insufficient evidence to support Scheinost's obstruction conviction because the delay was too insignificant to be considered obstruction. In addition, because Scheinost's unlawful possession of a controlled substance conviction has already been vacated, the *Blake* issue he raises is now moot. Accordingly, we reverse the trial court and remand for Scheinost's conviction to be vacated.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PEÑALVER, J.P.T.

I concur:

MAXA, P.J.

PRICE, J. (dissenting) — Officer Morine ordered Scheinost to stop during what the majority assumes to be a lawful *Terry* stop. Rather than comply with the officer's order, Scheinost attempted to flee—unsuccessfully, as it turned out, because the officer was able to chase down, tackle, subdue, and handcuff the defendant fairly quickly. The majority concludes that because of Officer Morine's efficiency in apprehending Scheinost, no crime was committed. Because this conclusion misconstrues the case law and has potentially damaging consequences, I respectfully dissent.

The majority relies on *State v. E.J.J.*, 183 Wn.2d 497, 354 P.3d 815 (2015), for the principle that if law enforcement only experiences a "minor delay" in carrying out its duties, then no obstruction of a law enforcement officer occurs under RCW 9A.76.020. This oversimplifies the case and contorts its principles in an effort to fit it into a very different context.

*E.J.J.* involved the question of whether the defendant was guilty of obstruction when he disrupted police officers' efforts to investigate the defendant's sister who was intoxicated and "out-of-control" outside of the defendant's residence. *Id.* at 499-500. The defendant was "calling the officers abusive names, yelling, and using profanity toward the officers while they were engaged" in their investigation. *Id.* at 499. The officers explained to the defendant that they were in the middle of the investigation and "instructed him multiple times to leave the scene and return to the house." *Id.* at 500. For a period of 10-15 minutes, the officers continued to tell the defendant to return to his residence and shut the door, but the defendant persisted in "yelling profanities and calling the officers abusive names." *Id.* at 500-01. Eventually, the officers arrested the defendant for obstruction of a law enforcement officer. *Id.*

In reversing the conviction for obstruction, our Supreme Court found significance in the First Amendment ramifications of criminalizing the defendant's abusive speech.

> [T]he Court of Appeals found sufficient evidence of obstruction from the fact that an officer was eventually required to escort E.J.J. back to the home, thus delaying officers. That E.J.J.'s behavior may have caused a minor delay is of no import. Although the officer's request that E.J.J. return to his home . . . might have been an attempt for a more *convenient* resolution of the situation, "[s]tates cannot consistently [sic] with our Constitution abridge those freedoms to obviate slight inconveniences or annoyances." In the First Amendment context, we must be vigilant to distinguish between obstruction and inconvenience.

*Id.* at 506 (some alterations in original) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 501-02, 69 S. Ct. 684, 93 L. Ed. 834 (1949)). Moreover, the decision in *E.J.J.* emphasized that conduct and not merely speech was required to establish obstruction. *Id.* at 502 ("Our cases have consistently required *conduct* in order to establish obstruction of an officer."). The court concluded by stating, "Where individuals exercise their constitutional rights to criticize how the police are handling a situation, they cannot be concerned about risking a criminal conviction for obstruction." *Id.* at 508.

Here, Officer Morine's interaction with Scheinost has no First Amendment implications. If we assume this was a valid *Terry* stop, as the majority does, Officer Morine gave a lawful order to Scheinost to stop. Scheinost responded by accelerating away on his bicycle. Unlike *E.J.J.*, Scheinost was not charged for obstruction for exercising his right to yell profanities at the officer. Rather, he was charged for his conduct—his attempt to flee a lawful order to stop.

The majority minimizes Scheinost's attempt to run by pointing out that Officer Morine successfully apprehended Scheinost relatively quickly, within 20 feet, and characterizes this as only a "minor delay of no import" mirroring the language in *E.J.J.* Majority Op. at 5. This "minor delay," however, had more than minor consequences to Scheinost. During his capture by Officer

9

Morine, Scheinost was pushed against a fence, thrown to the ground, a knee shoved in his back, and forcibly handcuffed. Tying a defendant's culpability for fleeing a lawful order to either a stopwatch or a tape measure to gauge the "inconvenience" to law enforcement could incentivize more of these flee attempts. And, I fear, more violent interactions will be the result.

I would hold that Scheinost's refusal to stop in response to the officer's lawful order, assuming a valid *Terry* stop, constitutes obstruction. *See generally*, *State v. Mendez*, 137 Wn.2d 208, 223, 970 P.2d 722 (1999), *abrogated on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 132 (2007) ("Flight from officers where the officers have grounds a *Terry* stop and a refusal to halt at their order may constitute obstruction of a public servant under former RCW 9A.76.020."). Respectfully, I dissent.

PRICE, J.