[No. 17716-5-III.   Division Three.   March 9, 2000.]

THE CITY OF SPOKANE, *Respondent*, v. RYAN EVERETT HAYS, *Petitioner.*

*Janice E. Holmes,* for petitioner (appointed counsel for appeal).

*Salvatore J. Faggiano, City Prosecuting Attorney,* and *John A. Level, Assistant,* for respondent.

SWEENEY, J. — The primary question raised by this criminal prosecution is whether it was reasonable for police to seize Ryan E. Hays, a passenger in a car stopped for a traffic violation. Considering the circumstances at the scene and Mr. Hays' hostile and confrontational behavior, it was reasonable. We, therefore, affirm the conviction for obstructing.

## FACTS

On the afternoon of December 10, 1996, Spokane Police Officers Robbie Dashiell and Isami Yamada made an arrest for assault at 621 S. Cannon, a multi-unit complex. The address was familiar to police as a gang hangout, known for criminal activity. At about 6:00 P.M., as Officers Yamada and Dashiell watched the area, a person left 621 S. Cannon and got into a car parked at the curb. The car pulled away from the curb and entered traffic without signaling. Officers Dashiell and Yamada followed for several blocks before pulling it over. The officers could see the driver and the front passenger "manipulating an article of clothing" on the bench-style seat between them. Officer Dashiell worried that the garment might conceal a gun. Officer Yamada was also concerned.

Officer Yamada went to the driver's side and asked the driver, Michelle Stewart, and the rear passenger to roll down their windows. They complied. Ms. Stewart produced the requested paper work. Officer Dashiell approached Mr. Hays in the front passenger seat. He heard the door lock engage. He told Mr. Hays to roll down the window. Mr. Hays refused. Through the open driver's side window, Of-

ficer Yamada also asked Mr. Hays to cooperate. Mr. Hays eventually cracked the window; Officer Dashiell ordered him out of the car.

Officer Dashiell was "concerned about what had been taken [sic] place there in the front seat of the car. I didn't feel comfortable standing there if there was a weapon inside of the vehicle." Officer Yamada was concerned that Mr. Hays was deliberately escalating the situation with the intent to hurt the officers. "I feared that he may have been planning something for us in relationship to the manipulation of the ah . . . of the cloth in between the driver seat and the passenger seat."

Officer Dashiell warned Mr. Hays that he was risking arrest for obstructing unless he got out. Mr. Hays insisted that, as a passenger, he was not required to comply with law enforcement at a traffic stop. He had read this in a newspaper. After ignoring several more orders to get out, Mr. Hays finally opened the car door. Officer Dashiell pulled him from the car.

Officer Dashiell then attempted a *Terry*[1] frisk. "Because of [Mr. Hays'] furtive movements and his hostility towards me, the area we were in, I felt concern for my safety." He ordered Mr. Hays to spread his feet and interlock his fingers behind his back. When Mr. Hays refused, Officer Dashiell arrested him for obstructing a public servant, pursuant to SPOKANE MUNICIPAL CODE (SMC) 10.07.032. He then handcuffed him and made him sit on the ground.

After Mr. Hays was subdued, the officers ordered the driver and backseat passenger out. The backseat passenger was also made to sit on the ground. These two cooperated. They were not searched. Officer Dashiell did a protective sweep of the vehicle. No weapon or illegal substance was found, either on Mr. Hays or in the car.

They put Mr. Hays in the backseat of the patrol car. He continued to yell. After about 15 minutes, he signed a citation and walked away.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Mr. Hays was tried by jury in district court for obstructing a police officer. Before the trial, he moved to dismiss because he was seized unlawfully. The court denied his motion. The court also denied Mr. Hays' discovery request for Spokane Police Department Internal Affairs investigative reports of the incident.

The trial court admitted police testimony about gang activity in the neighborhood. Defense counsel also questioned Officer Dashiell about gang activity. On cross-examination of Officer Dashiell, Mr. Hays offered as an exhibit the transcript of a police radio report generated later that evening. Officer Dashiell was not involved in that call. Mr. Hays argued that evidence that he called for police assistance in an unrelated subsequent incident tended to prove he was not hostile and uncooperative. The judge excluded the evidence.

The jury found Mr. Hays guilty. The superior court affirmed. We accepted discretionary review.

## DISCUSSION

**1. Was Mr. Hays lawfully seized as a passenger in a vehicle stopped for a traffic violation?**

Mr. Hays argues that only the driver is lawfully seized by a traffic stop. And therefore police needed independent reasonable suspicion based on objective facts that the passenger is involved in criminal activity to detain him. *State v. Larson*, 93 Wn.2d 638, 641-42, 611 P.2d 771 (1980).

Mr. Hays provides a *Gunwall*[2] analysis sufficient to show that the issue should be analyzed under article I, section 7 instead of the Fourth Amendment. *State v. Mendez*, 137 Wn.2d 208, 218, 970 P.2d 722 (1999).

The most recent Washington case on a passenger's rights following a traffic stop is *Mendez*. In *Mendez*, a car was pulled over for a traffic stop. A passenger got out and ran away. Police pursued and caught him. They charged him

---

[2]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

with obstructing and found a marijuana pipe during the incident search. The passenger was convicted of both obstructing and possession of paraphernalia. This court affirmed. But the Supreme Court reversed. It held that a passenger is not seized when a driver is stopped for a suspected traffic violation and may walk away, absent an articulable concern for the safety of officers and others at the scene. *Id.* at 220.

We have a bright-line rule for the driver. The driver is thereby "seized" when a car is stopped for a traffic infraction. *Id.* at 222. The police can take all necessary steps to control the scene. This includes ordering the driver either to stay in or get out of the vehicle. *Id.* at 220.

■ But with the passenger, the rule is not clear. We must look at the facts of each case. Passengers are not automatically seized by the stop. They may get out of the car and walk away. *Id.* at 222. The traffic infraction creates probable cause to seize only the driver. It does not diminish the privacy rights of the passengers. *Id.* A passenger is seized only when his or her freedom of movement is restrained "by means of physical force or a show of authority[.]" *Id.*

The duty of the police to control the scene extends, nonetheless, to passengers who remain at the scene. So if there is an articulable safety concern involving the passengers, they are subject to the same police authority to order them in or out of the car. *Id.* at 225-26.

The facts of this case distinguish it from *Mendez* in a couple of important respects. The passenger in *Mendez* did not obstruct the officers in any way. Mendez merely tried to leave the scene. *Id.* at 224. Mr. Hays did not leave. By electing to remain, he subjected himself to the authority of the officers to control the scene. Second, the police in *Mendez* never articulated any reason why the departing passenger aroused fear for officer safety. Here, both Officers Yamada and Dashiell expressed plausible safety concerns based on extrinsic factors as well as Mr. Hays' conduct.

■ ■ Article I, section 7 affords greater privacy to

automobile passengers than the Fourth Amendment. It is, therefore, more restrictive of law enforcement officers' authority over passengers during traffic stops. *Mendez*, 137 Wn.2d at 219. The articulable suspicion threshold of *Terry* must be met if the purpose of the interaction with the passenger is investigatory. *Id.* at 220. If not, we balance the passenger's privacy interests against concerns for the safety of officers and the public during traffic stops. *Id.* at 219.

The officers need point only to some fact that creates a "heightened awareness of danger" such as would warrant an "objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car." *Id.* at 221 n.5. The purpose is to ensure safety for themselves, the vehicle occupants, and nearby citizens during a traffic stop. *Id.* at 220. The seizure must be warranted at its inception, not retroactively justified by subsequent events. *Id.* at 224.

Whether it is reasonable to order a passenger to get out or to stay in a car is a fact-specific question. Among the nonexclusive factors warranting positive or negative restraint are the relative numbers of officers and vehicle occupants, the behavior of the occupants, the time of day and place of the stop, traffic at the scene and affected citizens, and the officer's familiarity with the occupants. *Id.* at 220-21.

Guided by these factors, we turn to the facts here.

There were three vehicle occupants and two officers. Both officers worried about the apparent interest of those in the front seat to something concealed between them. Mr. Hays was hostile and confrontational for no apparent reason. It was dark. The place was Spokane's "Charlie sector," an area known for crime. The record does not reflect the traffic at the scene or whether other bystanders were present. The officers had no direct knowledge of the occupants. The address from which one of the passengers emerged before getting in the car was, however, particularly notorious for crime and gang activity. These same officers had responded to an assault call there earlier that day.

Mr. Hays was sitting in the passenger seat. He was therefore not seized and was free to walk away from the initial stop. He did not. He elected instead to remain in the vehicle. He was then seized when Officer Dashiell ordered him out of the car. *Mendez*, 137 Wn.2d at 222. Officers Dashiell and Yamada were nervous about Mr. Hays' intentions. Their safety concerns were reasonable and, therefore, tipped the interest balance from Mr. Hays' privacy to officer and public safety. *Id.* at 220. It was reasonable to ask Mr. Hays to get out of the car.

The seizure was, therefore, lawful.

### 2. Was the initial traffic stop lawful?

Alternatively, Mr. Hays contends that both passengers and driver are seized in a traffic stop at the moment the officers pulled up behind the vehicle and activated their flashing lights. *State v. Stroud*, 30 Wn. App. 392, 394-95, 634 P.2d 316 (1981). He argues that he was, therefore, seized by the initial traffic stop. And because the stop was unreasonable, the seizure was unlawful.

He argues that the traffic stop was not authorized by the SPOKANE MUNICIPAL CODE which does *not* require a signal when a parked car pulls away from the curb. It used to, but was amended to eliminate this requirement. SMC 16.61.300. The officers in fact issued this ticket under SMC 16.61.305 which does require a signal when any *moving* vehicle turns or changes lanes. He concludes then that there was no lawful basis for stopping the car in the first place. So everything that happened after that was unlawful as to Mr. Hays.

Mr. Hays' interpretation of the code has merit.[3] But the offense here was obstructing a police officer. It does not

---

[3]SMC 16.61.300 governs parked cars entering traffic. This section is worded identically with RCW 46.61.300: "No person shall start a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety." Until 1965, both RCW 46.61.300 and SMC 16.61.300 expressly required a signal. The amendment's only effect was to eliminate this language.

RCW 46.61.305 and SMC 16.61.305 govern moving vehicles changing lanes or turning. They are required to signal for 100 feet.

then make any difference that the original traffic stop was unjustified.

■ A citizen must not willfully hinder, delay, or obstruct a law enforcement officer discharging his "official powers or duties." RCW 9A.76.020; SMC 10.07.032. Officers are performing official duties even during an arrest that later turns out to be without probable cause, provided they were not acting in bad faith or engaged in a "frolic" of their own. *State v. Hudson*, 56 Wn. App. 490, 496-97, 784 P.2d 533 (1990). Even if the officer is acting unlawfully, the citizen must still comply, and rely on legal recourse. *State v. Barnes*, 96 Wn. App. 217, 224-25, 978 P.2d 1131 (1999) (citing *State v. Valentine*, 132 Wn.2d 1, 19, 935 P.2d 1294 (1997)).

Even if Mr. Hays' interpretation of the code is correct, the only effect would be that Ms. Stewart, the driver, would prevail if she were to challenge the ticket. She would not be relieved from her duty to stop and cooperate. Similarly, just because the passenger is not seized when the car he is riding in is lawfully stopped for a traffic infraction does not mean that he is not required to comply with the instructions of the officers controlling the scene. Mr. Hays was required to cooperate, whether the traffic citation issued to the driver was valid or not.

The alleged traffic infraction here may be debatable. But this does not excuse Mr. Hays' failure to cooperate with officers at the scene.

The conviction is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KURTZ, C.J., and KATO, J., concur.

---

Here, no violation of any kind is alleged after the car started moving. The only alleged violation was not signaling while leaving a curbside parking position. Mr. Hays is correct that .300, not .305 applies. Unless the movement away from the curb was otherwise not reasonably safe, there was no lawful reason to stop the car or detain the occupants.