[No. 18190-1-III. Division Three. January 9, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY JAMES COOK, *Appellant*.

*Gary C. Hugill*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Brandi E. Shroyer, Deputy*, for respondent.

SCHULTHEIS, J. — During a traffic stop, passenger Gregory Cook opened a pack of cigarettes and a knotted piece of plastic containing methamphetamine fell out in full view of a police officer. Mr. Cook sought exclusion of the evidence as the fruit of an illegal seizure. He claimed he kept his identification card in the pack of cigarettes and opened the pack only because the police officer demanded his identification. The trial court denied the motion to suppress. On appeal Mr. Cook contends the Supreme Court's recent opinion in *State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999), supports suppression of the evidence and reversal of his conviction. Because we find that the police had a reasonable basis for requesting Mr. Cook's identification, we affirm.

The facts are not disputed. In November 1998, Deputy Wayne Dubois of the Benton County Sheriff's Department

stopped a truck for having inadequate license plate lights. Mr. Cook was one of two passengers in the front seat of the truck. He sat closest to the passenger door. Deputy Dubois asked the driver for her license and other documents and asked Mr. Cook his name. Mr. Cook answered that he was "Lonnie Cook." The deputy recognized Mr. Cook and knew that his name was not Lonnie. When Officer Wayne Meyer of the Kennewick police arrived soon after, Deputy Dubois told him that Mr. Cook had lied about his identity and might have outstanding warrants.

Officer Meyer stood outside the passenger door to prevent the passengers from leaving. Although Deputy Dubois later testified he thought he heard Officer Meyer ask for Mr. Cook's name and identification card, Officer Meyer testified he could not remember asking for either. Mr. Cook pulled out a hard pack of cigarettes. As he flipped up the top flap of the pack, a piece of plastic knotted around a white powder fell out and landed on the passenger door armrest, in view of Officer Meyer. Recognizing that the packaging was common for narcotics, the officer asked Mr. Cook to step out of the truck, patted him down for weapons, and placed him in custody. A syringe loaded with methamphetamine was found in Mr. Cook's left front pocket. During a later search of the vehicle, officers found Mr. Cook's identification in a little wallet or fanny pack, not in his cigarette pack.

Mr. Cook was charged by information with possession of methamphetamine, RCW 69.50.401(d). He challenged the admission of the evidence in a CrR 3.6 hearing held in December 1998. After the two officers testified, Mr. Cook took the stand and testified that Officer Meyer asked him to produce his identification. He explained that he usually kept his identification in his cigarette pack and opened the pack only because he was ordered to hand over the identification card. The trial court concluded that Officer Meyer had probable cause to arrest Mr. Cook because the officer recognized, in plain view, the substance that fell from the pack of cigarettes as a controlled substance. Consequently, the evidence was admitted and Mr. Cook was convicted in a bench trial on stipulated facts.

On appeal, Mr. Cook asserts the evidence is inadmissible as the fruit of an illegal search and seizure. He contends the officers violated his right of privacy by refusing to allow him to leave the scene, demanding his identification, and jumping to the conclusion that the knotted plastic contained narcotics.

 We first examine the record to determine whether Mr. Cook was unlawfully seized. A person is seized when, by means of a show of force or authority, his or her freedom of movement is restrained. *State v. Mendez,* 137 Wn.2d 208, 222, 970 P.2d 722 (1999). The test is whether a reasonable person, under the circumstances, would have believed he or she was not free to leave. *Id.* A traffic stop does not automatically effect a seizure of the passengers in the stopped car. *Id.* Further, an officer's request for a passenger's identification is unlikely to constitute a Fourth Amendment seizure. *State v. Armenta,* 134 Wn.2d 1, 11, 948 P.2d 1280 (1997). Here, although Officer Meyer indicated that he placed himself outside the passenger door so that he could prevent the passengers from leaving the scene, Mr. Cook never testified that he wanted to leave or tried to leave. Because he elected to remain in the truck, his freedom of movement was not restrained and he was not seized until after Officer Meyer saw the contraband.

 Although he was not seized in the initial contact, Mr. Cook's privacy interests as a passenger afford him a second basis for challenging the officers' conduct in this exchange. Article I, section 7 of the Washington Constitution protects certain privacy rights from trespass absent a warrant. *Parker,* 139 Wn.2d at 493-94. The right to be free from unreasonable governmental intrusion into a citizen's private affairs encompasses automobiles and their contents. *Id.* at 494. While officers can take all necessary steps to control the driver during a traffic stop, the Washington Constitution restricts police authority over automobile passengers. *Mendez,* 137 Wn.2d at 219-20; *City of Spokane v. Hays,* 99 Wn. App. 653, 659, 995 P.2d 88 (2000). Police

officers may not require people in the car other than the driver to give identification unless other circumstances give the police independent cause to question the passengers. *State v. Larson*, 93 Wn.2d 638, 642, 611 P.2d 771 (1980), *quoted in Mendez*, 137 Wn.2d at 218.

■ In this case, the court's undisputed findings indicate that Deputy Dubois thought he heard Officer Meyer ask Mr. Cook for identification. Officer Meyer did not recall asking for identification. For the purposes of this analysis we assume the request was made. The next question is whether the request was justified by an independent basis for suspicion that Mr. Cook was involved in criminal activity. *Hays*, 99 Wn. App. at 659; *State v. Chelly*, 94 Wn. App. 254, 259-60, 970 P.2d 376, *review denied*, 138 Wn.2d 1009 (1999). Deputy Dubois testified that before Officer Meyer contacted Mr. Cook, Deputy Dubois told Officer Meyer that Mr. Cook had given a false name. Mr. Cook's false identifying information gave Officer Meyer a reasonable basis to suspect that Mr. Cook might be hiding the fact that there were outstanding warrants for his arrest. *See Chelly*, 94 Wn. App. at 261 (false identifying information gave police a reasonable basis for running a warrants check on a passenger). It follows that Officer Meyer's reasonable suspicions justified a request for Mr. Cook's identification.

■ ■ When Mr. Cook opened the pack of cigarettes to purportedly remove his identification card, the knotted piece of plastic fell out in full view of Officer Meyer. The officer testified that based on his training and experience, he recognized that the plastic was typical packaging for narcotics. The trial court's evaluation of Officer Meyer's credibility is not subject to review. *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997). Because the officer was lawfully present at his vantage point, his view of the plastic did not constitute a search, *State v. Bobic*, 140 Wn.2d 250, 259, 996 P.2d 610 (2000), and his subsequent arrest and search of Mr. Cook incident to that arrest was proper. *State v. Rodriguez-Torres*, 77 Wn. App. 687, 693-94, 893 P.2d 650 (1995).

*Parker*, relied upon by Mr. Cook, is distinguishable. In *Parker*, the Supreme Court examined three cases where police ordered passengers to exit a vehicle, and also ordered the passengers to leave their personal belongings in the vehicle. When the drivers were arrested, the vehicles were searched and contraband was found in the passengers' belongings. *Parker*, 139 Wn.2d at 502-04, held that although officers may order passengers in or out of a stopped vehicle as necessary to control the scene, the passengers' belongings may not be searched absent independent, articulable, objective suspicion to support such a search. No search occurred in this case until after Mr. Cook was in custody.

To summarize, the unchallenged findings of fact support Officer Meyer's reasonable suspicion that Mr. Cook might have had outstanding warrants. This suspicion in turn justified the officer's request for Mr. Cook's identification. The subsequent open view discovery of the knotted piece of plastic containing narcotics that fell out of Mr. Cook's cigarette pack justified his arrest and the search incident to that arrest. Admission of the methamphetamine discovered in the plastic and in the syringe found in Mr. Cook's pocket was proper under these circumstances.

Affirmed.

SWEENEY and KATO, JJ., concur.