[No. 46997-5-I. Division One. February 11, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL BYRD, *Appellant*.

*Jason B. Saunders* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Daniel J. Clark, Deputy,* for respondent.

GROSSE, J. — A vehicle stop, whether pretextual or not, and no matter how brief, is a "seizure" for purposes of constitutional analysis regarding the validity of the stop.

This "seizure" applies to the driver as well as the passengers of the vehicle, who may both contest the validity of the vehicle stop. Furthermore, where a defendant, as does Michael Byrd here, contests the validity of a stop and where, as here, the State appropriately concedes the stop is invalid, the evidence obtained from Byrd, a passenger, as a result of the stop must be excluded.

## FACTS

On November 25, 1999, at approximately 5:10 A.M., Seattle police officer Donna Stangeland observed a 1983 Mercury automobile drive past her traveling north; she was facing east. As the car passed, Officer Stangeland noticed a "trip permit" in the rear window of the vehicle, but could not tell if the trip permit was valid. It was dark at the time Officer Stangeland saw the vehicle. Michael Byrd was a passenger in the front seat of the vehicle.

Officer Stangeland pulled in behind the vehicle, ran the vehicle's license plate number, and learned that the car's registration had expired. Officer Stangeland then activated her lights and stopped the vehicle to examine the trip permit, and for no other reason. Upon approaching the car, Officer Stangeland observed that the driver's window had been broken out and replaced with an opaque plastic, which made it difficult to see inside the car. Because her view of the driver was obscured by the plastic covering, Officer Stangeland asked the driver to open the door. She then saw that none of the occupants was wearing seat belts and requested identification from everyone in the vehicle.

Byrd gave the officer his name and a computer check revealed an outstanding warrant for Byrd's arrest. Officer Stangeland then arrested Byrd, but not the driver, and searched the vehicle incident to Byrd's arrest and the arrest of another passenger who also had outstanding warrants. Inside the bag that had been at Byrd's feet, Officer Stangeland found crack cocaine pipes, a semiautomatic gun, and packaging material with narcotics residue. A

search of Byrd at the police station revealed suspected narcotics in his mouth and socks. Byrd was charged with unlawful possession of a firearm and possession of cocaine in violation of the Uniform Controlled Substances Act.

At trial, Byrd claimed that Officer Stangeland's initial traffic stop was unconstitutional and made a motion to suppress both the physical evidence and Byrd's statements that resulted from the stop. The trial court denied Byrd's motion, holding that the stop was a reasonable and minimal intrusion on the occupants to verify whether the trip permit was current; thus, the stop was valid. The jury found Byrd guilty of possession of cocaine. Byrd appeals and argues the stop was improper.

On appeal the State concedes that because driving with a trip permit is legal in Washington, a stop merely to check the validity of a trip permit is invalid.[1] However, the State argues that the plastic obscuring the driver's side window was an independently valid reason to stop the car.[2]

## DISCUSSION

■ Vehicle passengers hold an independent, constitutionally protected privacy interest not diminished merely upon stepping into an automobile driven by another.[3] The narrow issue presented here is whether passengers, after a traffic stop by police officers, have standing to challenge the constitutionality of the stop. Although this issue was not raised below by the State and was not the basis for the trial court's ruling, Byrd raises this issue for the first time on appeal. Since Byrd's right to challenge the constitutionality of the traffic stop is determinative of whether the court

---

[1] RCW 46.16.160(2).

[2] We review de novo whether the facts presented here constitute a seizure of Byrd for purposes of constitutional inquiry and whether the stop was valid. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997) (citing *State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996)).

[3] *State v. Parker*, 139 Wn.2d 486, 496, 498, 987 P.2d 73 (1999) (citing *State v. Mendez*, 137 Wn.2d 208, 218-20, 970 P.2d 722 (1999)).

should exclude the evidence used to convict him, we must consider the issue of passenger standing.

■ The initial seizure of a car and its occupants does not justify further intrusion by police officers on the rights of the passengers beyond those steps necessary to the officer controlling the scene, or steps justified by exigent circumstances such as officer safety.[4] To extend their authority beyond the initial seizure of the car and driver and to exert control over the passengers, police officers must have an independent, articulable, and lawful basis for their actions.[5]

Where no circumstances exist justifying continued detention of vehicle passengers, they enjoy undiminished privacy rights.[6] However, the focus of inquiry regarding the rights of passengers in an automobile stopped by police officers differs depending upon the degree of contact between the police officers and the passengers and the degree of control exerted by the officers. Thus, to the extent the encounter goes no further than social interaction short of the show of authority that independently gives rise to a seizure, a passenger is free not to respond to a police officer's questions.[7] Further, because the rights of passengers are no different than the rights of any other citizen who encounters a police officer, a passenger is also free to leave once any exigent circumstances regarding control of his or her movements dissipates.[8]

■■ The question of whether a passenger has standing to contest the lawfulness of the stop of the vehicle is answered by the fact of the stop. "Whether pretextual or not, a traffic stop is a 'seizure' for the purpose of constitu-

---

[4] *State v. Stroud*, 106 Wn.2d 144, 151-52, 720 P.2d 436 (1986); *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

[5] *State v. Larson*, 93 Wn.2d 638, 642-45, 611 P.2d 771 (1980).

[6] *Mendez*, 137 Wn.2d at 222.

[7] *State v. Rankin*, 108 Wn. App. 948, 33 P.3d 1090 (2001).

[8] *Mendez*, 137 Wn.2d at 222-24; *Armenta*, 134 Wn.2d at 10-11, 16.

tional analysis, no matter how brief."[9] Certainly passengers as well as the driver are "seized" when a vehicle is stopped by police officers. Without the stop, the passengers would not be present to be subjected to further police scrutiny and control. The stop necessarily involves the privacy rights of the passenger. Thus, a passenger in a vehicle stopped by police officers can contest the lawfulness of the stop.[10] This standing is direct and does not implicate the "automatic standing" doctrine. Byrd has standing as a passenger to contest the validity of the initial traffic stop.

█ On appeal, the State claims that there was an alternative basis for the stop based on the obscured driver's side window.[11] While an appellate court may affirm a court's admission of evidence on any valid basis, including a basis not relied upon by the trial court, the facts here do not support such an approach.[12] The facts show that prior to the stop, Officer Stangeland could not tell if the trip permit was valid and that it was dark at the time she first saw the vehicle. Throughout pretrial hearings and motions, Officer Stangeland testified numerous times that her only reason for pulling over the car was to verify whether the trip permit was valid. The agreed findings of fact and conclusions of law also state that Officer Stangeland stopped the car to investigate the status of the car's trip permit and "for no other reason."

Furthermore, the officer's testimony during pretrial motions and at the suppression hearing indicates that she saw the plastic covering only when she approached the driver's side, after she stopped the vehicle. The only evidence in the record suggesting that Officer Stangeland *may* have seen the obscured driver's window prior to the stop is in the

[9] *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)).

[10] *Ladson*, 138 Wn.2d 343; *State v. Chelly*, 94 Wn. App 254, 257-59, 970 P.2d 376 (1999); *State v. Takesgun*, 89 Wn. App. 608, 610-11, 949 P.2d 845 (1998).

[11] RCW 46.37.410(2); Seattle Municipal Code 11.84.140.

[12] *State v. Butler*, 53 Wn. App. 214, 217, 766 P.2d 505 (1989).

fact-finding hearing. There is neither a clear record nor any finding by the trial court concerning the plastic covering.

"In the absence of a finding on a factual issue we must indulge the presumption that the party with the burden of proof failed to sustain their burden on this issue."[13] The State has failed to carry its burden of proof with regard to this issue. There was no independent basis for the stop other than to determine whether the trip permit was valid.

██ Stopping the vehicle solely to verify the validity of the trip permit, and for no other reason, was impermissible. This invalid stop violated Byrd's rights protected under article I, section 7 of the Washington State Constitution. Without the unconstitutional stop, Byrd would not have been seized and searched. Therefore, the results of the search must be suppressed.[14] We reverse and remand for further proceedings consistent with this opinion.

BECKER, A.C.J., and APPELWICK, J., concur.

--------

[13] *Armenta*, 134 Wn.2d at 14 (citing *Smith v. King*, 106 Wn.2d 443, 451, 722 P.2d 796 (1986)).

[14] *Ladson*, 138 Wn.2d at 359 (citing *Kennedy*, 107 Wn.2d at 4).