[No. 21134-7-III.   Division Three.   May 29, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JAKE E.R. REHN, *Appellant*.

---

[3] *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

*Dennis C. Cronin* and *David R. Hearrean* (of *Hearrean & Cronin, P.S.*), for appellant.

*Ronald B. Shepherd, Prosecuting Attorney,* and *Clark D. Colwell, Deputy,* for respondent.

BROWN, C.J. — Jake Rehn was convicted at a combined suppression and stipulated facts bench trial of possessing psilocin mushrooms found in a car in which he was a passenger. On appeal, Mr. Rehn argues the trial court erred in denying suppression of the physical evidence and his statements. We affirm.

## FACTS

Mr. Rehn moved to suppress the drug evidence and his statements after being charged with a single count of possessing a controlled substance, psilocin. The trial court held a combined CrR 3.5/3.6 hearing and stipulated bench trial. The facts are drawn mainly from the undisputed findings of fact and the disputed findings resolved in favor of the State and supported by substantial evidence. *See generally State v. Hill,* 123 Wn.2d 641, 644-47, 870 P.2d 313 (1994).

Lincoln County Deputy Jeff Conway stopped a vehicle with a loud exhaust driven by Adam Rutherford. Chris Jones sat in the front passenger seat. Mr. Rehn sat in one of the rear seats. Because Mr. Rutherford was driving while his license was suspended, he was arrested. Mr. Jones and Mr. Rehn remained in the car during Mr. Rutherford's search incident to his arrest and placement into the patrol

car. During Mr. Rutherford's search, the deputy found a live .22 cartridge.

Concerned about a weapon in the car accessible by the occupants, the deputy decided to search the vehicle for weapons. After asking Mr. Rehn and Mr. Jones to exit the vehicle, Deputy Conway inquired if they had any weapons or if there was a weapon in the vehicle. Both men answered no.

Deputy Conway testified, "I asked if there was anything else in the vehicle that that shouldn't—they shouldn't have." Clerk's Papers (CP) at 73-74. Mr. Rehn responded that there were " 'mushrooms' " under the dash of the car. CP at 190. The deputy associated the term " 'mushrooms' " with psilocin or psilocybe hallucinogenics and immediately placed Mr. Rehn under arrest. CP at 190.

Deputy Conway then searched the vehicle incident to the arrest of both Mr. Rutherford and Mr. Rehn. The deputy looked under the dash with his flashlight but was reluctant to reach under the dash with his hands due to the possibility of touching needles or other sharp objects. He did not find the mushrooms.

Deputy Kelly Watkins arrived. The deputies decided to advise Mr. Rehn of his constitutional rights. Deputy Conway testified Mr. Rehn retrieved the mushrooms after he was read his rights, and had waived them. Deputy Conway partly testified:

> There's—there was a conversation, and I don't recall if he voluntarily said that he would go up and get—or made the—made the offer. And, I asked him to go ahead and go up and get them.
>
> But it was a—it was—it was a request that he go up and get them. It wasn't an order. I didn't order him to go up there and retrieve the mushrooms.

CP at 102.

Deputy Watkins testified, "And I think prior to reading the—the rights, he said something to the effect, that let me show you where they're at because Conway didn't find

them." CP at 111. According to Deputy Watkins, Mr. Rehn's statement was not in response to any question. Mr. Jones and Mr. Rehn testified they were not read their rights until after the mushrooms were retrieved; the trial court decided otherwise. The trial court determined Mr. Rehn retrieved the mushrooms from the vehicle, although contradicted by the defense. According to Mr. Rehn, Mr. Rutherford had merely told him about the mushroom location.

Based upon the State's evidence, the trial court decided Mr. Rehn had admitted after having been advised of his rights that he had purchased the mushrooms and had consumed some. Deputy Watkins testified Mr. Rehn admitted consuming mushrooms with Mr. Rutherford. Mr. Rehn testified he had purchased the mushrooms and had given them to Mr. Rutherford, who hid them under the dash of the car.

The trial court found Mr. Rehn guilty and entered written findings of disputed and undisputed facts, and conclusions of law. The trial court imposed a standard range sentence. Mr. Rehn appealed.

## ANALYSIS

### A. Physical Evidence

The issue is whether the trial court erred in denying suppression of the physical evidence and concluding Mr. Rehn was not unconstitutionally seized under the Washington and United States Constitutions.

■ This court reviews challenged findings of fact from a suppression hearing for substantial evidence. *See Hill*, 123 Wn.2d at 644. Substantial evidence is evidence in the record of a quantity sufficient to persuade a rational fair-minded person of the truth of the finding. *Id.* Challenged findings of fact supported by substantial evidence are binding on appeal. *Id.* at 647; *see also State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Similarly, unchallenged findings are verities on appeal. *Hill*, 123 Wn.2d at 647; *see*

*also O'Neill,* 148 Wn.2d at 571 (overruling cases inconsistent with *Hill*). The trial court's conclusions of law derived from the findings of fact are subject to de novo review. *See State v. Armenta,* 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

Generally, Mr. Rehn's briefing indicates he disagrees with the trial court's finding that he was not detained "except to keep him from the vehicle to be searched." CP at 192. *See State v. Neeley,* 113 Wn. App. 100, 105, 52 P.3d 539 (2002) (noting the reviewing court may discern the challenge from the briefing). It appears Mr. Rehn challenges conclusions of law 5, 6, and 7 which generally state Mr. Rehn was not detained unreasonably, not under arrest, and not questioned in a custodial setting. These concerns raise the question whether Mr. Rehn, a passenger, was seized in a constitutional sense by the seizure of Mr. Rutherford, the driver.

Regarding whether a person is "seized," article I, section 7 of the Washington Constitution affords greater privacy protection than the Fourth Amendment. *State v. Young,* 135 Wn.2d 498, 509-10, 957 P.2d 681 (1998). A person is seized when, by means of physical force or a show of authority, the State restrains the person's freedom of movement and "a reasonable person would not have believed he or she is (1) free to leave, given all the circumstances . . . or (2) free to otherwise decline an officer's request and terminate the encounter." *O'Neill,* 148 Wn.2d at 574. The standard is " 'a purely *objective* one, looking to the actions of the law enforcement officer.' " *Id.* (quoting *Young,* 135 Wn.2d at 501). Mr. Rehn bears the burden of proving he was seized in violation of article I, section 7. *Id.*

Drivers are generally considered seized when the subject of a traffic stop. But, a passenger's status has not received uniform treatment: "Whether pretextual or not, a traffic stop is a 'seizure' for the purpose of constitutional analysis, no matter how brief." *State v. Ladson,* 138 Wn.2d 343, 350, 979 P.2d 833 (1999). On the other hand, our Supreme Court has reasoned also: "Stopping the car in

which [the defendant] was a passenger did not effect a seizure of [the defendant] or the other passengers." *State v. Mendez*, 137 Wn.2d 208, 222, 970 P.2d 722 (1999).

Apparently, barring exceptional circumstances, a passenger is free to walk away from or stay at the traffic stop scene. In one exceptional circumstance, the Supreme Court noted the defendant passenger "was seized when the deputy directed him to remain in the vehicle." *State v. Reynolds*, 144 Wn.2d 282, 286 n.2, 27 P.3d 200 (2001) (citing *Mendez*, 137 Wn.2d at 222-23).

In *Ladson*, a passenger case, the Supreme Court held the traffic stop was a seizure for purposes of analyzing Mr. Ladson's claim of a violation of article I, section 7. *Ladson*, 138 Wn.2d at 346-47, 350. *See State v. Larson*, 93 Wn.2d 638, 645, 611 P.2d 771 (1980) (invalid traffic stop constituted an unlawful seizure of the defendant passenger). An invalid stop, pretext or not, may be the common link between *Ladson* and *Larson*. Here, the stop is not challenged.

In any event, after *Ladson*, and referring to personal articles (a purse) belonging to a passenger, the Supreme Court reasoned "vehicle passengers hold an independent, constitutionally protected privacy interest." *State v. Parker*, 139 Wn.2d 486, 496, 987 P.2d 73 (1999). "This interest is not diminished merely upon stepping into an automobile with others." *Id.* In *Parker*, a search incident to the driver's arrest was not a circumstance that resulted in lawful authority to search Ms. Parker's purse within the passenger compartment of the car. *Id.* at 502-03.

Division One of this court recently held an automobile passenger had standing to contest the lawfulness of the stop, reasoning:

> Certainly passengers as well as the driver are "seized" when a vehicle is stopped by police officers. Without the stop, the passengers would not be present to be subjected to further police scrutiny and control. The stop necessarily involves the privacy rights of the passenger. Thus, a passenger in a vehicle stopped by police officers can contest the lawfulness of the stop.

*State v. Byrd*, 110 Wn. App. 259, 264, 39 P.3d 1010 (2002) (citing *Ladson*, 138 Wn.2d at 350; *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)). Two decades earlier, Division Two of this court arrived at a very similar conclusion, reasoning, "Although [the defendant] [w]as a mere passenger . . . he was as effectively restrained from leaving the scene as was the person sitting in the driver's seat." *State v. Stroud*, 30 Wn. App. 392, 396, 634 P.2d 316 (1981).

Notwithstanding *Byrd* and *Stroud*, the *Mendez* court stated "the trial court's conclusion [the passenger] was seized by the traffic stop is clearly wrong." *Mendez*, 137 Wn.2d at 222. *Ladson* did not expressly modify *Mendez* on that point and may be viewed in the narrow context of a passenger's personal articles search. This division has followed *Mendez* in reasoning a traffic stop does not automatically result in a seizure of the concerned passengers. *State v. Cook*, 104 Wn. App. 186, 189, 15 P.3d 677 (2001). "Passengers are not automatically seized by the stop. They may get out of the car and walk away." *City of Spokane v. Hays*, 99 Wn. App. 653, 658, 995 P.2d 88 (2000) (citing *Mendez*, 137 Wn.2d at 222). Accordingly, we reason the initial stop of the Rutherford vehicle alone did not constitute a seizure of Mr. Rehn. Rather, the police contact with Mr. Rehn constituted an incidental citizen encounter.

■ Encounters not amounting to seizures between police officers and citizens routinely occur in and out of traffic stop contexts, no matter whether the officer has suspicions of possible criminal activity meriting investigation. *See* *O'Neill*, 148 Wn.2d at 575, 580. In encounter contacts, a police officer may question a citizen and ask for identification without a seizure under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *Id.* at 580. But, "*if* a police officer's conduct or show of authority, objectively viewed, rises to the level of a seizure, that seizure is valid only where there are 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the detention of the person." *Id.* at 576 (quoting *Terry*, 392 U.S. at 21).

■ Here, the traffic stop led to Mr. Rutherford's custodial arrest and search. Officer safety concerns arose regarding the possible existence of armed passengers, or a firearm hidden in the interior of the car. Up to this point, Mr. Rehn remained in the car as a passenger and was free to leave. Then, Mr. Rehn was properly asked to step out of the car to facilitate the search of the passenger compartment incident to Mr. Rutherford's arrest. This request was not an unconstitutional seizure of Mr. Rehn, but a step taken to facilitate the vehicle search incident to Mr. Rutherford's arrest, and more akin to controlling the arrest scene. *See Byrd*, 110 Wn. App. at 263.

Again, whether a person has been seized "depends upon whether a reasonable person would believe, in light of all the circumstances, that he or she was free to go or otherwise end the encounter." *O'Neill*, 148 Wn.2d at 575. Although under *Mendez* and *Hays* Mr. Rehn was initially free to go or end the encounter, when the officer asked him to exit the vehicle and began questioning him, the officer restricted his freedom to leave and intruded to some extent into his private affairs. *See id.* at 582. At least, Mr. Rehn would not feel free to refuse the deputy's request to step out of the car.

"The initial seizure of a car and its occupants does not justify further intrusion by police officers on the rights of the passengers beyond those steps necessary to the officer controlling the scene, or steps justified by exigent circumstances such as officer safety." *Byrd*, 110 Wn. App. at 263 (citing *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986); *State v. Stroud*, 106 Wn.2d 144, 151-52, 720 P.2d 436 (1986)). "To extend their authority beyond the initial seizure of the car and driver and to exert control over the passengers, police officers must have an independent, articulable, and lawful basis for their actions." *Byrd*, 110 Wn. App. at 263 (citing *Larson*, 93 Wn.2d at 642-45). "Where no circumstances exist justifying continued detention of vehicle passengers, they enjoy undiminished privacy rights." *Id.* (citing *Mendez*, 137 Wn.2d at 222).

In sum, the facts illustrate the deputy's need to control the arrest scene. He had an arrested driver, and an articulable concern about the presence of armed passengers, or firearms within reach of those passengers. The deputy had a legitimate purpose in exerting some control over the passengers while he resolved his officer safety concerns. The detention of Mr. Rehn in connection with the potential firearm issue did not offend either article I, section 7 or the Fourth Amendment.

## B. Statements

The issue is whether the trial court erred in failing to suppress Mr. Rehn's statements and concluding he was not in custody at the time of the statements.

■■ Regarding Mr. Rehn's *Miranda*[1] rights: "Whether an officer should have given *Miranda* warnings to a defendant depends on whether the examination or questioning constituted (1) custodial (2) interrogation (3) by a state agent." *State v. Solomon*, 114 Wn. App. 781, 787, 60 P.3d 1215 (2002) (citing *State v. Post*, 118 Wn.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992)). "A defendant is in custody for purposes of *Miranda* when his or her freedom of action is curtailed to a 'degree associated with a formal arrest.'" *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983)).

■ Whether a person is in custody for *Miranda* purposes is a mixed question of fact and law. *Thompson v. Keohane*, 516 U.S. 99, 112-13, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995); *Solomon*, 114 Wn. App. at 787. "The factual inquiry determines 'the circumstances surrounding the interrogation.'" *Solomon*, 114 Wn. App. at 787 (quoting *Thompson*, 516 U.S. at 112). "The legal inquiry determines, given the factual circumstances, whether 'a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* at 787-88 (quoting *Thompson*, 516 U.S. at 112). In resolving the legal

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

question, the reviewing court applies an objective test to determine the ultimate inquiry: whether there was a formal arrest or a restraint of the defendant to a degree consistent with formal arrest. *Thompson*, 516 U.S. at 113; *Solomon*, 114 Wn. App. at 788.

A driver stopped for a speeding violation and suspected of driving under the influence "was not free to leave" as officers conducted field sobriety tests and asked him if he had been drinking, but he was not in custody because "his freedom was not curtailed to the degree normally associated with formal arrest." *City of College Place v. Staudenmaier*, 110 Wn. App. 841, 849-50, 43 P.3d 43 (citing *State v. Rivard*, 131 Wn.2d 63, 76, 929 P.2d 413 (1997); *State v. Ferguson*, 76 Wn. App. 560, 886 P.2d 1164 (1995)), *review denied*, 147 Wn.2d 1024 (2002).

As pointed out in our previous discussion, Mr. Rehn's situation as a passenger differs from the *Staudenmaier* situation where the focus of the inquiry was the driver. Mr. Rehn's seizure was the by-product of the deputy's arrest of Mr. Rutherford. Our analysis now focuses on whether the seizure of Mr. Rehn escalated into the equivalent of an arrest prior to the incriminating statement.

In a CrR 3.5 analysis, we review the trial court's findings of fact for substantial evidence if challenged. *Solomon*, 114 Wn. App. at 789. If the factual findings are unchallenged, they are verities on appeal. *Id*. The legal inquiry pertains to the trial court's conclusions of law, a matter this court reviews de novo. *Id*.

Mr. Rehn did not assign error to specific findings of fact, but his briefing questions the trial court's finding that he was not detained "except to keep him from the vehicle to be searched." CP at 192. *See Neeley*, 113 Wn. App. at 105 (the reviewing court may discern the challenge from the briefing).

As noted above, a passenger is generally free to walk away from or stay at the scene of a traffic stop. *Mendez*, 137 Wn.2d at 222; *Hays*, 99 Wn. App. at 658. While Mr. Jones

and Mr. Rehn gave different accounts regarding why they stayed in the car during Mr. Rutherford's arrest as compared to the deputy's account, it is clear no custodial arrest of Mr. Rehn took place until he volunteered that mushrooms were hidden under the dashboard.

Mr. Rehn testified he believed he was required to remain at the scene and at some point gave his license to Deputy Conway. On the other hand, Deputy Conway could not recall exactly what he said to Mr. Rehn and Mr. Jones, "I believe I might have said that I'd be right back if—made conversation with them." CP at 90. The deputy remembered asking them to get out of the car before beginning his search of the car but could not recall telling them to stand at any particular place. The deputy had a hunch Mr. Rehn was "under the influence of something." CP at 93. The deputy could not recall taking Mr. Rehn's driver's license or giving it back to him later. And the deputy could not recall whether he ran a warrant check on Mr. Rehn.

The deputy said it was not his practice to ask persons to empty their pockets, "I typically ask them if they have anything in their pockets." CP at 95. The deputy said he was satisfied neither Mr. Rehn nor Mr. Jones had weapons on their persons. Then, the deputy testified, "I just asked them if there was anything in the car that they shouldn't have." CP at 96. The deputy denied asking about drugs, "I just asked them if they had anything they weren't supposed to have. It's—[inaudible] is [inaudible] contraband you're not allowed to have. Whether or not that be drug-related." CP at 96. The deputy conceded he was looking for drugs when he asked that question.

At best, it appears a dispute existed regarding what was said to the passengers while Deputy Conway placed Mr. Rutherford in his patrol car while controlling the arrest scene; a dispute apparently resolved by the trial court in favor of the State. Where substantial evidence supports a challenged finding, we defer to the trier of fact's credibility determinations. *State v. Glenn*, 115 Wn. App. 540, 546, 62 P.3d 921 (2003).

Next, the deputy asked the passengers to exit the car while he prepared to search it incident to Mr. Rutherford's arrest. Deputy Conway did not search the passengers, but asked if they had anything in their pockets. He took their driver's licenses for identification purposes. After the deputy indicated he was going to search the car and inquired specifically about weapons and generally about any other items in the car that he might be concerned about, Mr. Rehn volunteered a statement that led to his immediate custodial arrest.

The situation was not as coercive or threatening as to suggest an arrest of Mr. Rehn. There was no pat-down or physical restraint. *See Staudenmaier*, 110 Wn. App. at 849-50. Mr. Rehn was not placed in the patrol car. *See United States v. Leshuk*, 65 F.3d 1105, 1109-10 (4th Cir. 1995) (reasoning placing suspect into police car does not necessarily elevate the detention into custody for *Miranda* purposes). And there was no repetitive questioning. *See United States v. Sullivan*, 138 F.3d 126, 131-32 (4th Cir. 1998) (concluding even repeated questioning over short span of time to motorist about contraband did not trigger *Miranda* warnings).

The record indicates the deputy, his suspicions aroused to the possible existence of weapons and drugs, reasonably extended the initial encounter with Mr. Rehn and Mr. Jones so he could ask them both a brief and general question about contraband before he searched the car for weapons. *See id.* "At the time the question was posed, appellant's detention had not yet risen to the level of a formal arrest or its functional equivalent." *Hatcher v. Commonwealth*, 14 Va. App. 487, 419 S.E.2d 256, 260 (1992). A reasonable person would have felt detained, but not to a degree associated with formal arrest. *See Solomon*, 114 Wn. App. at 790-91; *Staudenmaier*, 110 Wn. App. at 849-50. Accordingly no *Miranda* violation occurred.

Affirmed.

KURTZ, J., concurs.

SCHULTHEIS, J. (dissenting) — Because I conclude that Jake Rehn was unlawfully questioned by a law enforcement officer while he was in custody, I respectfully dissent.

*Miranda*[2] warnings protect a defendant's right to be free from compelled self-incrimination while in the inherently coercive environment of police custody. *State v. Heritage*, 114 Wn. App. 591, 596, 61 P.3d 1190 (2002), *petition for review filed* (Wash. Jan. 22, 2003). The warnings must be given whenever a defendant is questioned in a custodial situation by a state agent. *Id.* (quoting *State v. Post*, 118 Wn.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992)). In this case, a deputy sheriff asked Mr. Rehn a question that was reasonably likely to elicit an incriminating response, satisfying the interrogation by a state agent factors of the *Miranda* test. *See id.* at 598. What remains is the question of custody.

In determining whether a suspect was in custody, we ask whether a reasonable person in the suspect's position would believe he or she was in police custody to the degree associated with formal arrest. *State v. D.R.*, 84 Wn. App. 832, 836, 930 P.2d 350 (1997). "The defendant must show some objective facts indicating his or her freedom of movement was restricted." *Post*, 118 Wn.2d at 607. Courts must engage every reasonable presumption against the defendant's waiver of constitutional rights. *State v. Riley*, 19 Wn. App. 289, 294, 576 P.2d 1311 (1978) (quoting *Barker v. Wingo*, 407 U.S. 514, 525, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

Here, the record shows that the deputy arrested the car's driver and told Mr. Rehn and Chris Jones to stay in the car while the deputy placed the driver in the patrol car. Later, the deputy had Mr. Rehn and Mr. Jones exit the car during

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the investigation. The deputy asked the men if they had anything in their pockets and then took their driver's licenses. In light of the fact that the car's driver had been arrested and the deputy held the passengers' licenses, a reasonable person would have believed his or her freedom was significantly curtailed. Consequently, I would find that Mr. Rehn was interrogated while in custody. Because he had not been advised of his *Miranda* rights before he was questioned, his incriminating statement should have been suppressed and his conviction reversed.